PEOPLE v McCLARY

1. ROBBERY—AIDING AND ABETTING—KNOWLEDGE—PRESENCE.

The mere presence of a defendant at the place of the commission of an armed robbery, even with the knowledge that an armed robbery is taking place, is not sufficient to constitute aiding and abetting.

2. ROBBERY—ARMED ROBBERY—ELEMENTS—INTENT—SPECIFIC INTENT.

In order to find a defendant guilty of armed robbery a jury must find that he had the requisite specific intent, which means more than a general intent, to commit, or aid in the act.

3. CRIMINAL LAW—ARMED ROBBERY—AIDING AND ABETTING—EVIDENCE—PERMISSIBLE INFERENCES—SCIENTER.

A defendant in an armed robbery case was co-equally guilty of the offense charged with the principal where from the facts testified to by the prosecution witnesses together with the permissible inferences therefrom, the jury could and did conclude that the robbery and flight were the result of a concert of action of which the defendant had the necessary scienter.

Appeal from Muskegon, James F. Schoener, J. Submitted Division 2 August 11, 1973, at Lansing. (Docket No. 15932.) Decided November 2, 1973.

Roger McClary was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Richard J. Pasarela,* Prosecuting Attorney, and *Neil G. Mullally,* Assistant Prosecuting Attorney, for the people.

REFERENCES FOR POINTS IN HEADNOTES

[1] 67 Am Jur 2d, Robbery §§ 8, 9.

[2] 67 Am Jur 2d, Robbery §§ 15–19, 55, 61.

[3] 21 Am Jur 2d, Criminal Law § 115 *et seq.*

  67 Am Jur 2d, Robbery §§ 8, 9, 62.

*Balgooyen, Daniels & Balgooyen, P. C.,* for defendant.

Before: GILLIS, P. J., and HOLBROOK and O'HARA,* JJ.

O'HARA, J. This is an appeal of right from a jury conviction of the offense of armed robbery. MCLA 750.529; MSA 28. 797.

A detailed recitation of the factual circumstances surrounding the robbery is necessary to place in focus the extent of defendant's claimed participation and to pinpoint his defense to this specific intent crime.

Shorn of euphemisms the persons involved in this incident had been boozing all day. The defendant is the uncle of the actual perpetrator of the attack upon the complainant. The weapon used was a tire iron. The nephew, Rick Rautanen, hit the complainant from behind with the iron, struck him again when he turned around, and forced him to put his wallet on the hood of his car. He then fled to the car in which the nephew and uncle had driven to the scene of the crime. Rautanen jumped into the car and McClary drove it away. They eluded pursuers but witnesses were able to get the license number of the car which was in turn given to the police. A check of the license number disclosed the car was registered in the name of the defendant. The police visited defendant's home but he hadn't returned at that time. Defendant had spent the night at the home of his parents. The next morning, after defendant's mother informed him that his wife had called and said the police had been at defendant's place and wanted to talk

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

to him, defendant had his sister call the sheriff's department. It was while allegedly on the way to the sheriff's department that defendant, defendant's brother, Fred, and Rautanen were apprehended at a gas station. The brother was not charged with any complicity in the offense. Rautanen showed the police the location of complainant's empty wallet. Also recovered were Rautanen's clothes worn the previous night stained with blood which matched a sample of the blood of the victimized complainant.

It is the theory and the defense of defendant that along toward 2 a.m. he drove the car into a private driveway adjacent to the restaurant where complainant was robbed and passed out in the car. While he was in this condition, Rautanen took the keys out of the car, opened the trunk, got the tire iron, and assaulted and robbed the complainant. Defendant claims he was unaware of the foregoing conduct by Rautanen. Rautanen from the witness stand confirmed this theory. His reason stated was that he did not want defendant to take a rap for which he, Rautanen, was solely responsible. It is not denied that after the robbery defendant drove the car away from the scene. He claims Rautanen awakened him and told defendant "let's get out of here before the police come". Thinking that the occupants of the house near the driveway might have awakened and complained about the presence of defendant's car, he drove away immediately.

Manifestly, the defense theory, if believed by the jury, would completely exculpate defendant. Conversely, if from the facts testified to by the prosecution witnesses together with the permissible reasonable inferences therefrom the jury concluded that the robbery and flight were the result

of a concert of action, of which defendant had the necessary scienter the defendant is co-equally guilty of the offense charged with the principal.

What then did the people establish by their proofs? Incontestably, defendant drove the car away within minutes after the robbery. The assaulted victim while being robbed shouted for help. Three patrons of the restaurant rushed to his aid. They identified the car unmistakably. They reported the incident to the police. The arrest followed. Does the foregoing make a jury submissible issue under proper instruction? We think so.

Short of occult powers which would enable the factfinder to look into the mind of the accused and ferret out this elusive element of specific intent, or an admission thereof by the accused—not likely in a contested case—the only way under our system specific intent can be established is exactly the way it was done in the case at bar. Admittedly it is not foolproof. We know there are guiltless people who have been convicted. We know, too, the guilty have gone free. Surrounded, as a defendant is by the presumption of innocence, the privilege against self-incrimination and the necessity of proof of guilt beyond a reasonable doubt, an accused has all the safeguards possible to incorporate into a system humanly administered.

In this case the trial judge very carefully pointed out to the jury that *"mere presence of the person at the place of the commission of a felony, even with the knowledge that a felony is taking place, would not be sufficient to constitute aiding and abetting".* (Emphasis supplied). Additionally, the court pointed out:

"This is an intentional crime.
"In order to find the defendant guilty, you must find

he had such an intent, which means more than a general intent, to commit or aid in the act."

No exceptions were taken to the charge.

Significantly, perhaps, the jury chose to believe the state's witness that the assailant got into the car on the passenger side and in half a minute or less the car drove off "rather hastily". We cannot resist mentioning that the driver, whether asleep or passed out during the incident, demonstrated remarkable recuperative power in getting the car out of the driveway. Significantly too perhaps, the jury disbelieved that the car was parked vertically in the driveway behind another vehicle as claimed by the defense, but pointed laterally parallel to the highway.

We have, as this opinion reveals, read the trial transcript with care. We have considered appellant's grounds for appeal. We find no reversible error.

Affirmed.

All concurred.